Manuel Pina BABBITT, Petitioner,

v.

Jeanne WOODFORD, Acting Warden,
California State Prison at San
Quentin, Respondent.

No. 99–70526.

United States Court of Appeals,
Ninth Circuit.

May 3, 1999.

---

Fern M. Laethem, State Public Defender, and Pillsbury, Madison & Sutro, Los Angeles, California, for petitioner Manuel P. Babbitt.

Ward A. Campbell, Deputy Attorney General, Los Angeles, California, for respondent Woodford.

Before: BRUNETTI, THOMPSON and HAWKINS[1], Circuit Judges.

PER CURIAM:

Manuel Pina Babbitt, a California state prisoner sentenced to die tomorrow morning at 12:01 a.m., has filed a motion for a stay of execution and an application for leave to file a successive petition for writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(b)(3) (1998). The Supreme Court of California this afternoon denied Babbitt's latest habeas petition and request for a stay of execution. We have jurisdiction under 28 U.S.C. § 2244, and we deny the motions Babbitt now presents to this court.

I

Manuel Pina Babbitt was found guilty of the first-degree murder of Leah Schendel after she died of heart failure during Babbitt's commission of a burglary, robbery, and attempted rape. During his trial, Babbitt relied on a mental-state defense, which included both expert testimony of Post Traumatic Stress Disorder ("PTSD") stemming from Babbitt's Vietnam experiences and testimony of family members about his deteriorating mental condition and often strange behavior. On April 20, 1982, a California jury convicted Babbitt of all charges. On May 8, 1982, Babbitt was found sane. On July 6, 1982, Babbitt was sentenced to death.

In 1988, the California Supreme Court rejected Babbitt's consolidated appeal and habeas corpus petition and unanimously affirmed Babbitt's conviction and death penalty judgment. *See People v. Babbitt,* 45 Cal.3d 660, 248 Cal.Rptr. 69, 755 P.2d 253 (Cal.1988). The United States Su-

preme Court denied certiorari. *See Babbitt v. California,* 488 U.S. 1034, 109 S.Ct. 849, 102 L.Ed.2d 981 (1989). On June 1, 1989, the California Supreme Court denied Babbitt's second petition for writ of habeas corpus. After further state habeas proceedings to exhaust unexhausted claims, Babbitt filed an amended habeas petition in the federal district court. The district court denied the petition, and we affirmed that denial in *Babbitt v. Calderon,* 151 F.3d 1170 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1068, 143 L.Ed.2d 72 (1999).

Babbitt then filed a fourth habeas petition in the California Supreme Court. That court denied the petition, and Babbitt has now filed in this court an "Emergency Motion for Leave to File a Second Petition for Writ of Habeas Corpus" in the district court. In that motion, he requests a stay of execution for thirty days so that he may brief the issues he presents and, "if necessary, seek further review from the United States Supreme Court."

II

The petition which Babbitt asks this court to permit him to file is a successive petition, subject to the "extremely stringent" requirements of the AEDPA. *Greenawalt v. Stewart,* 105 F.3d 1268, 1277 (9th Cir.1997).

Except under extremely narrow circumstances, not present here, section 2244(b)(1) of the AEDPA requires the dismissal of claims that were previously presented in a federal habeas petition. *See Martinez–Villareal v. Stewart,* 118 F.3d 628, 630 (9th Cir.1997), *aff'd,* 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998). Claims that were not previously presented must also be dismissed unless either (1) they rely on a new rule of constitutional law or (2) the petitioner makes a prima facie showing that "the factual predicate

---

1. Judge Hawkins was drawn by lot to replace Judge Hall, a previous member of this panel, when Judge Hall by reason of her senior status elected not to continue as a member of the panel.

for the claim could not have been discovered previously through the exercise of due diligence" and "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2). We have interpreted this last prong as permitting a petitioner to establish by clear and convincing evidence that, " 'but for constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.' " *Thompson v. Calderon,* 151 F.3d 918, 923 (9th Cir.1998) (quoting *Sawyer v. Whitley,* 505 U.S. 333, 336, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)), *cert. denied,* —— U.S. ——, 119 S.Ct. 3, 141 L.Ed.2d 765 (1998).

We address each of the claims Babbitt proposes to raise in the district court, if he were authorized to do so.

### A. Trial Counsel's Alleged Alcohol Abuse

■ Babbitt argues that, because of his trial counsel's alcohol abuse, his counsel was ineffective during the guilt, sanity, and penalty phases of Babbitt's trial. Babbitt contends he was unable to raise this argument in the amended petition he previously filed in the district court because he only recently discovered the evidence while preparing for his clemency hearing. The recent discoveries include his trial counsel's recent resignation from the State Bar as a result of a legal malpractice action alleging that he had been drinking during the trial. This information caused Babbitt's habeas counsel to re-interview the trial counsel's legal staff, who revealed that trial counsel had drunk "three or four drinks" on a "number of occasions" during the lunch recesses of Babbitt's trial.

■ Babbitt raised an ineffective assistance of trial counsel claim in his amended habeas petition he previously filed in the district court. A "ground is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments.... Identical grounds may often be proved by different factual allegations...." *United States v. Allen,* 157 F.3d 661, 664 (9th Cir.1998) (internal quotations and citations omitted).

In his previously filed federal habeas petition, Babbitt argued that his counsel failed to sufficiently present a PTSD defense at the guilt phase or as mitigating evidence at the penalty phase. We rejected both of his arguments under the test in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Babbitt,* 151 F.3d at 1174, 1175–76. Although Babbitt asserts new factual explanations for his counsel's ineffectiveness at trial, the gravamen of his legal argument is essentially the same. Because we have already determined that trial counsel's performance during the guilt, sanity, and penalty phases was not constitutionally deficient, we will not consider new factual grounds in support of the same legal claim that was previously presented. *See Allen,* 157 F.3d at 664. Under the AEDPA, a legal claim considered previously must be dismissed. *See* 28 U.S.C. § 2244(b)(1).

■ Even if we were to conclude that Babbitt's ineffective assistance of counsel claim (now grounded on allegations of his counsel's alcohol abuse during trial) was not previously presented, we would nonetheless deny Babbitt's application to file a successive petition on this ground because Babbitt fails to make a prima facie showing that he could not have previously discovered the facts underlying his claim through the exercise of due diligence. *See* 28 U.S.C. § 2244(b)(2); *Siripongs v. Calderon,* 167 F.3d 1225, 1226 (9th Cir.1999).

The recent allegations of alcohol abuse during Babbitt's trial stem from two of Babbitt's trial counsel's staff members. These persons were known to Babbitt as early as 1991. Given Babbitt's focus on his trial counsel's ineffectiveness, a claim he has asserted from the beginning of his

state habeas applications and in his amended habeas petition previously filed in the district court, there is no reason, other than lack of due diligence, to explain Babbitt's failure to include in his previous federal habeas petition the allegations he now makes concerning his trial counsel's alcohol abuse. *Cf. McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (fact that petitioner did not possess or could not reasonably have obtained certain evidence does not excuse failure to raise claim earlier "if other known or discoverable evidence could have supported the claim in any event"). Because Babbitt would be unable to meet the AEDPA's due diligence requirement, we would be required to reject this claim in any event. *See* 28 U.S.C. § 2244(b)(2).

**B. Trial Counsel's Alleged Racial Bias**

■ Babbitt, an African–American, also contends his trial counsel was racially biased and that this bias created a structural error that impeded his opportunity for a fair trial and sentence. Specifically, Babbitt argues that his counsel failed to interview African–American witnesses, failed to protest when the prosecutor dismissed African–American venire persons via peremptory challenges, and failed to communicate adequately with Babbitt.

Because Babbitt did not raise this argument in his previously filed federal habeas petition, and the claim does not rely on a new rule of constitutional law, we must determine whether Babbitt makes a prima facie showing of due diligence under 28 U.S.C. § 2244(b)(2)(B). *See Martinez–Villareal,* 118 F.3d at 631. Babbitt argues that he did not become aware of his trial counsel's alleged race bias until he recently learned that his counsel was being sued for discriminatory practices by a former secretary. While investigating the former secretary's allegations, Babbitt's habeas counsel re-interviewed Babbitt's brother, William Babbitt, and learned that Babbitt's trial counsel had used a racial epithet and spoken negatively of the capabilities of Af-

rican–American jurors while meeting with William Babbitt and his wife prior to Babbitt's trial in 1982.

Most of the facts Babbitt alleges about his counsel's alleged race bias have been known to him since the conclusion of his trial. He knew, for example, that he was an African–American defendant charged with an interracial crime against a white woman and tried with an all-white jury, a white judge, and a white defense attorney. His counsel's failure to question the members of the jury about their potential race bias and to protest the peremptory challenge of African–American jurors was also plainly ascertainable by reviewing the record. These facts, in themselves, provided sufficient factual predicates to trigger Babbitt's obligation to raise a racially biased counsel claim in his previously filed federal habeas petition. Due diligence by Babbitt's habeas counsel would also have uncovered trial counsel's alleged racially derogative remarks to Babbitt's brother, who was called as a witness during the trial.

We conclude that the factual predicates underlying Babbitt's racial animus claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(b)(2)(B); *cf. McCleskey,* 499 U.S. at 497. Accordingly, we must reject this claim under the AEDPA. *See* 28 U.S.C. § 2244(b)(2).

**III**

■ Although we need not address the second prong of 28 U.S.C. § 2244(b)(2), given our determination that Babbitt failed to exercise due diligence in both of his first two claims, we also note that Babbitt's ineffective assistance claim stemming from his counsel's alleged alcohol abuse and his racial animus claim would also fail under the AEDPA because the facts underlying these claims, if proven, would be insufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found Babbitt guilty of the underlying offense or eligible for the death penalty un-

der California law. *See Thompson,* 151 F.3d at 923; *LaGrand v. Stewart,* 170 F.3d 1158, 1999 WL 104754, at * 1 (9th Cir. Feb.26, 1999). In other words, Babbitt's claims, even if they were proven, do not establish actual innocence of either the murder of Ms. Schendel or the special circumstance findings that made Babbitt eligible for the death penalty, which findings were that the murder was committed while the defendant was engaged in the commission of a robbery, attempted rape, and burglary. *See People v. Babbitt,* 248 Cal.Rptr. 69, 755 P.2d at 259 (citing Cal. Pen.Code § 190.2(a)(17)(i), (iii) & (vii) (1988)).

## IV

For the reasons set forth above, Babbitt's "Emergency Motion for Leave to File a Second Petition for Writ of Habeas Corpus" and his motion for a stay of his execution are DENIED.